Kirby v. Balke.

---

## G. R. KIRBY v. BEN A. BALKE, Appellant.

Division One, December 19, 1924.

1. **APPEAL: Brief: No Adequate Statement of Facts.** A general statement in an indefinite manner of the nature of the case, which fails to set forth the facts constituting the case and contains none of the terms of the contract sued on or the subsequent acts of the parties relating thereto, is inadequate and does not comply with either Rule 15 or the statute (Sec. 1511, R. S. 1919).

2. **FRAUD: Purchase of Land: Misrepresentations: Knowledge of Purchaser.** The finding of the trial chancellor on an issue of fraud is not binding on the appellate court, but is subject to review on appeal; but where the vendee, in a suit to compel specific performance of a contract to purchase land, was not a stranger in the community where the land lay, or wholly devoid of knowledge of its quality, and twice had full opportunity to examine it, and did examine it to the extent he desired, before entering into the contract, he is not entitled to have the contract cancelled on the ground that he was misled by the vendor's statements of its worth, and the decree of the chancellor denying cancellation will be upheld.

3. **SPECIFIC PERFORMANCE:** Definite and Fair Contract: Right to Enforce. Where the petition by its allegations sets up a contract for the purchase or exchange of lands, which is certain and definite and valid on its face, and defendant's violation thereof, and the proof establishes such allegations, the plaintiff has a right to invoke the powers of a court of equity to compel the specific performance of the contract, and that right calls for the exercise by the court of a sound judicial discretion where the facts show the plaintiff and defendant negotiating and contracting upon equal terms, without fraud, misrepresentation, covin, overreaching or deceit. In such case plaintiff is not restricted to an action for damages for a breach of the contract.

4. ————: Value of Properties: Inequitable Contract: Adjustments. The value of the properties at the time the contract was entered into, and not their value at the time of the trial to enforce the contract, is the value to be considered in determining whether the contract was inequitable and one-sided. And where the evidence shows that the value which the parties placed upon their respective properties in their contract for an exchange was a fair value, and the court adjusts the account accordingly, it will not be ruled that the contract was inequitable or one-sided.

5. ————: As Far as Possible: Incidental Right to Damages. A vendee may have specific performance of that part of the contract to purchase land which the vendor has power to perform, and damages for that part which the vendor has made it impossible for him to perform. The vendee has one cause of action—the right to have the contract enforced—and his right to damages for the disposal of certain portions of the property by the vendor after the institution of the suit, making complete performance impossible, is incidental to the right to enforce the contract.

6. ————: Stock of Goods: Bulk Sales Law. A contract for the exchange of properties by which defendant assumed to make effectual a sale to plaintiff of a one-half interest in a stock of goods owned by him is not void under the Bulk Sales Act (Sec. 2286, R. S. 1919). The sale or trade "of the major part in value or the whole of a stock of goods," without compliance with the terms of that statute, is void as against creditors of the vendor, but it is not void as between vendor and vendee.

7. ————: Right of Wife: Non-Action by Court. Defendant charged in his answer that $1725 of his wife's own money had gone into the properties which he contracted to sell and convey to plaintiff. It is not charged that plaintiff had any notice that she had an interest in the property. She was not a party to the contract, nor is

Kirby v. Balke.

she a party to the suit for specific performance, but it is shown
that she accompanied defendant when he examined the property
which he agreed to take in exchange. What ever interest she had
arose before the contract was made, and plaintiff had no notice
thereof. *Held*, that non-action by the court upon the issue raised
by said averment did not affect her right to the property, nor could
any decree in reference to her interest have affected her right
therein, and the trial chancellor did not err in excluding all evi-
dence offered in connection with said portion of the answer.

Citations to Headnotes: 1, Appeal and Error, 3 C. J. par. 1584; 2, Ap-
peal and Error, 4 C. J. par. 2876, and Exchange of Property, 23 C. J.
par. 18; 3, 4, 5 and 7, Specific Performance, 36 Cyc. 548, 549, 550, 587, 588,
612, 740, 753, 787 (1926 Anno); 6, Fraudulent Conveyances, 27 C. J. par.
893.

Appeal from Polk Circuit Court.—*Hon. C. H. Skinker,*
Judge.

AFFIRMED.

*L. Cunningham* and *W. S. Jackson* for appellant.

(1)   The jurisdiction of a court of equity to decree
the specific execution of contracts is not a matter of right
in the parties, and to be demanded *ex debito justitiæ,* but
applications invoking this power are addressed to its
sound and reasonable discretion, and are granted or
rejected, according to the circumstances of each case.
Fish v. Lightner, 44 Mo. 268; Taylor v. Williams, 45 Mo.
80; Cleveland v. Foundry Co., 141 Mo. 488. Specific per-
formance is a matter of discretion, to be determined, not
arbitrarily, but in accordance with the facts established,
and in conformity to such principles as are applicable to
the facts.   (2)   The court will not decree specific per-
formance if it would be inequitable between the parties.
Taylor v. Williams, 45 Mo. 80; Pomeroy v. Fullerton,
131 Mo. 581; Hollman v. Conlon, 143 Mo. 369; Shinkle
v. Vickery, 156 Mo. 1.   (3)   In cases of fraud or mis-
take, or of unconscionable bargains, or when the decree
will produce injustice, and not in any case where the de-
cree will be inequitable under all the circumstances, will
specific performance be decreed.   Veth v. Gierth, 92 Mo.
97.   (4)   Inadequacy of price so gross and palpable as

of itself to appear evidence of actual fraud, will defeat specific performance. Bean v. Valle, 2 Mo. 126. (5) The contract was in violation of the Bulk Sales Law. R. S. 1919, sec. 2286.

*Henry P. Lay* for respondent.

(1) There being a valid written agreement between the plaintiff and defendant, untainted with fraud, the plaintiff is as much entitled to specific performance as to any other legal remedy. The "discretion" retained by equity in granting or refusing such performance, is a judicial discretion, and must be judicially exercised in accordance with established rules. Berberet v. Myers, 240 Mo. 58; Edwards v. Watson, 258 Mo. 631; Kirkpatrick v. Wiley, 197 Mo. 123. (2) Plaintiff is entitled to specific performance of that part of the contract which defendant retains power to perform, with a money judgment in lieu of performance as to the property which defendant has sold or permitted to be sold. Lackawanna C. & I. Co. v. Long, 231 Mo. 605; Meek v. Hurst, 223 Mo. 688. (3) The parties having traded at arms length, and the defendant having had full opportunity to examine, and having in fact examined plaintiff's land before signing the contract, he cannot have the contract set aside on the ground that he was misled as to plaintiff's statements as to quality, quantity or value. Morse v. Rathburn, 49 Mo. 91; Langdon v. Green, 49 Mo. 363; Anderson v. McPike, 86 Mo. 293.

LINDSAY, C.—The suit of plaintiff is for specific performance in part of a contract, whereby plaintiff sold certain real estate to defendant, and defendant sold to plaintiff certain real estate, all at agreed prices, and defendant also sold to plaintiff an interest in certain personal property; and plaintiff asked judgment for damages alleged to have been sustained by him, through defendant's breach of the contract, and through certain acts done or suffered to be done by defendant rendering

complete performance impossible.  The case was tried
upon the fifth count of the amended petition, an answer
of the defendant, and a reply by plaintiff which set up
certain new matter based upon occurrences subsequent
to the filing of the petition.  The suit was brought in
Benton County, and a change of venue taken to Polk
County.  The salient facts as to the terms of the con-
tract, set out in the petition, may be summarized.

On July 2, 1920, plaintiff and defendant made a con-
tract whereby each bargained and sold to the other
certain property.  Plaintiff bargained and sold to de-
fendant a farm of 198.40 acres of land in Benton County,
subject to an encumbrance for $5500, and the interest
thereon after July 1, 1920, at the price of $12,000, agree-
ing to give defendant possession of all that portion of
the farm from which the crops had been gathered on
September 1, 1920, and the remainder as the crops were
gathered, the plaintiff reserving all crops.  The defend-
ant bargained and sold to plaintiff, at the price of $9000,
a certain lot and brick building, known as the Ryan
Building, in the city of Warsaw, subject to an encum-
brance of $5000, in favor of Warsaw Building & Loan
Association, and agreed to give plaintiff possession in
ten days; the plaintiff to receive all rents after July 1,
1920, and to make the July payment falling due July 1,
1920, to the building and loan association.  The defend-
ant also sold to the plaintiff the defendant's one-half
interest in the stock of goods and fixtures contained in
said Ryan Building, the plaintiff agreeing to pay to de-
fendant the cost price therefor, deducting, however, the
amount of cost price that remained unpaid.  The de-
fendant also bargained and sold to plaintiff certain real
estate situated in Fristoe, in Benton County, at the price
of $3500, subject to an encumbrance of $2000, and in-
terest after July 1, 1920, the plaintiff to receive the
rents after said date.  Good and sufficient warranty
deeds were to be made, respectively, by the parties, but
subject to the taxes of 1920.

The petition set forth the agreements made in the contract, and subsequent thereto, as to furnishing abstracts of title, upon which no issue arises, and set forth the failure and refusal of defendant to comply with the contract, and plaintiff's willingness, ability and offer to do so. The petition then alleged that since the date of the contract, $500 of the principal and all of the interest, amounting in all to $636.33, under the encumbrance upon plaintiff's said farm, had become due, and had been paid by plaintiff; that since the date of the contract defendant had continued to sell the goods mentioned in the contract, so that the same were changed, and that the other half interest therein had been sold, and that the situation of the goods and fixtures had been so changed as to be of little value to plaintiff. The petition prayed for specific performance of the agreement so far as it could be done; that plaintiff recover the sum of $6500, the net price of his farm under the contract, with interest thereon, also the said sum of $636.33; and also the further sum of $1000, for breach of the remainder of the contract, and for general relief.

After the overruling of defendant's demurrer, alleging that the petition improperly united several causes of action, and united causes of action inconsistent and repugnant, and failed to state facts sufficient to entitle plaintiff to any equitable relief, and after the overruling of defendant's motion to make the petition more definite and certain, defendant filed his answer, admitting the execution of the contract sued upon, but denying all other allegations of the petition, and for further defense, alleged that he was induced to enter into the contract through false and fraudulent representations of plaintiff, and of plaintiff's agent, as to the value, productiveness, number of acres in cultivation and kind of soil of plaintiff's farm; that upon learning the true facts defendant rescinded the contract, and defendant's wife refused to execute any deed of conveyance to plaintiff; that the property of defendant described in the con-

tract was purchased with the joint means of defendant and his wife, and acquired through their joint efforts, and that defendant's wife was the owner of an interest therein of the value and amount of $1725 and dower; that the value of plaintiff's land as stated in said contract was inflated in the amount of at least $4000. Upon these grounds defendant asked cancellation of the contract.

The second count of defendant's answer was a counterclaim, wherein defendant alleged that when plaintiff filed this suit he also filed a *lis pendens;* that thereby defendant's said property was rendered unsalable; that the encumbrance upon defendant's property in Fristoe became due in September, 1920; that after an extension to January 1, 1921, said encumbrance was on February 4, 1921, foreclosed, and the Fristoe property sold under said encumbrance, at the price of $2650, which was $850 less than its value; that said sale and foreclosure came to pass because the filing of the *lis pendens* by plaintiff clouded defendant's title to his property, prevented him from securing an extension of said loan and from borrowing money on any of his property to discharge it, whereby defendant was damaged in said sum of $850, for which he asked judgment. The court sustained plaintiff's demurrer to defendant's said counterclaim.

The plaintiff in reply pleaded the sale of the Fristoe property under foreclosure, and the further change in the character and situation of the goods and fixtures whereby specific performance as to those properties was no longer possible. The plaintiff further alleged that since the institution of the suit, rents to the amount of $618, had accrued to defendant upon the Ryan Building in Warsaw. The plaintiff asked for enforcement and performance of the contract so far as was then possible, that title to the Warsaw property be divested out of defendant and vested in plaintiff, that defendant should receive the deed to plaintiff's said farm, and that there

be an accounting of rents accrued to defendant, of the sum paid by plaintiff on the encumbrance upon said farm, and of any sums paid by defendant upon the building-and-loan encumbrance on the Warsaw property. The plaintiff asked for judgment in the sum of $3762.93, as the sum due to him under the terms of the contract, less such sums as it might be found the defendant had paid upon the building-and-loan encumbrance, and for general relief.

The court in its decree made its findings under the evidence, and found that the contract had been fairly entered into, and was not procured by any fraud of plaintiff; that the plaintiff within the time required had tendered full performance, and was at all times willing, ready and able to perform, had offered to do so, had tendered performance in court, and that defendant had wholly failed to do and perform the things required. The court found the sums paid by defendant upon the encumbrance on his farm to be $636.33, and allowed $10 as interest thereon; the amount of rent accrued to defendant on the Warsaw property to be $616; and the amount paid by defendant upon the encumbrance on that property to be $446.60 and, adjusting said sums, found there was due from defendant to plaintiff the sum of $815.73. The court further found that defendant had permitted the Fristoe property to be sold, and had permitted the sale and change in nature of the goods and fixtures, so that said properties could not be conveyed; found that under the contract the agreed value of plaintiff's farm exceeded the agreed value of defendant's Warsaw property in the sum of $2500; found that plaintiff was entitled to specific performance so far as the same was possible, and that plaintiff was entitled to a judgment in the sum of $3315.73, which should be a lien upon the farm, to be conveyed by plaintiff to defendant.

The court thereupon decreed that the title to the Warsaw property be divested out of defendant and vested in plaintiff, subject to the building-and-loan en-

cumbrance, and subject to the inchoate right of dower of defendant's wife, and that the plaintiff's title in his said farm be divested out of plaintiff and vested in defendant, subject to the encumbrance remaining thereon, and that plaintiff's deed thereto be deposited with the clerk for the use of defendant.  The court further decreed that plaintiff recover of defendant the said sum of $3315.73, the same to be a lien upon the said farm. Pending disposition of defendant's motion for a new trial, the plaintiff remitted $500 of the judgment for $3315.73.

It is urged by respondent that defendant's appeal should be dismissed because appellant's brief does not contain "a fair and concise statement of the facts of the case," as required by Rule 15 of this court. Longan v. Kansas City Ry. Co., 299 Mo. 561, is cited. Section 1511, Revised Statutes 1919, is also applicable. Since Rule 15 is reported in the back part of each of the official volumes of the Missouri Reports it need not be set forth here, nor said Section 1511.  The statement of appellant does not give an adequate idea of the facts of the case.  It states the nature of the case in a general and indefinite manner, and fails to set forth the facts which constitute this case.  There is no reference to the facts as to the fraud charged, nor are the terms of the contract, nor are the subsequent acts of the parties thereto set out, so as to show the real nature of the case. The statement is largely taken up with a history of the formal proceedings antedating the trial.  But the record in this case is not voluminous, and the essential facts are not difficult of ascertainment.  For that reason, and because the issues upon which appellant relies are clearly stated, and because also of the conclusions reached thereon, hereafter stated, the case is considered upon its merits.

The trial court found that defendant was not induced to contract to take plaintiff's farm at the agreed

price through the fraud of plaintiff, or his agent. Upon
this issue the only witnesses as to what was said
were the plaintiff and the defendant. The defend-
ant was born and brought up on a farm in Benton County,
and had lived in that county all of his life. He was thirty-
five years old. He had owned and for one year recently
before lived on a farm, in Benton County, not many miles
from the plaintiff's farm. At the time the contract was
made he lived in Warsaw. Defendant and his wife, with
Eaton, a real estate agent, first went to look at plain-
tiff's farm in the latter part of May, 1920. They re-
mained there about an hour, and examined and walked
over, not all, but a part of the land. The defendant testi-
fied that Eaton said the farm would readily sell for $60
an acre. The defendant went again the latter part of
June, accompanied by Eaton. He then looked at the
land and buildings. He testified that Eaton and Kirby
told him the land "would raise from forty to fifty to
sixty bushels of corn in a good year," and that they
said "there was about one hundred forty to one hundred
fifty acres in cultivation." These were all the represen-
tations mentioned as to quantity, value and productive-
ness. Defendant on his cross-examination admitted that
what plaintiff said to him was that about "one hundred
forty acres had been plowed." The defendant gave it
as his judgment that only about eighty or ninety acres
was under plow, that some of the land was in pasture
and that the pasture was in bad shape. He had not ex-
amined the land again, after making the contract, be-
fore refusing to carry out the contract, or before the
trial. The plaintiff testified that he told defendant there
"was one hundred forty to one hundred fifty acres that
had been plowed," and that he told defendant it was
worth $60 an acre, but denied that he told defendant it
would readily sell for $60 an acre, or that he told him
it would produce forty to sixty bushels of corn per acre.
Eaton was not called to testify. The defendant intro-
duced the depositions of three witnesses as to the value
of the farm in the summer of 1920. His witness Cun-
ningham testified that its value then was $60 an acre "the

*Fraud.* (margin note)

way land was selling.'' The witness Stark valued it at from $40 to $50 an acre, and the witness Norman at about $40 an acre. The plaintiff also introduced evidence as to the value of the land at the time in question. His witness, Kidwell, valued it at $60 to $65 an acre. Shull valued it at $60 an acre. The witness Brashears testified that the land to the north had sold for $50 an acre, and the land to the south for $80 an acre. The testimony of the defendant shows that at the time he signed the contract he had knowledge of all the facts as to the farm which he knew and testified about at the trial. The evidence in the record sustains the finding of the court on this point.

In a case of this kind the finding of the trial court upon this issue is not binding and is subject to review here, but upon the evidence in this record that finding cannot be disturbed. The defendant was not wholly a stranger as to the quality of land situated as was plaintiff's farm. He twice had full opportunity to examine, and did examine it to the extent he desired, before contracting for it, and he is not entitled to have the contract cancelled upon the ground that he was misled by the statement as to its value or quality; or by the statement as to the amount of it that had been plowed, which was not shown to be untrue. [McCaw v. O'Malley, 249 S. W. 41; Anderson v. McPike, 86 Mo. 293; Morse v. Rathburn, 49 Mo. 91; Langdon v. Green, 49 Mo. 363.] Besides, the contention that the contract was procured through the fraud of plaintiff does not seem to be relied upon here. It is not asserted in the brief. The burden is that the trade was one-sided. There **One-Sided Contract.** is no contention that the contract is lacking in certainty. Attention is directed to the fact that the petition does not expressly state that plaintiff had no adequate remedy at law, and it is urged that the facts stated and shown do not warrant the grant of relief by a court of equity, but that plaintiff's **Action for Damages.** only remedy, if any, was a suit at law for damages; that in any event the granting of such relief is within the discretion of the court, and that

in this case the ''contract sought to be enforced is grossly unfair and inequitable,'' and should not be enforced. The rule covering these contentions in large part is stated in Beheret v. Myers, 240 Mo. l. c. 77, as follows:

''Is plaintiffs' only remedy at law for damages? ''The scope of this contention is leveled at the discretion courts of chancery exercise in decreeing performance in specie. The rule is that specific performance is somewhat of grace as over against a hard-and-fast matter of absolute right. The chancellor has discretion to perform or not to perform. But he has studied the law of specific performance to little purpose who supposes that discretion may be exercised without reason and of caprice. The discretion to be exercised is a sound (that is) *judicial* discretion. It is exercised against performance when plaintiffs come into a court of equity with unclean hands; or when the contract is incomplete or so ambiguous as to be uncertain in terms and intendment; or where the contract is unfair, overreaching, biting; or when there are present (in pleadings and proofs) elements of mutual mistake in matter of substance, covinous contrivances, fraud, imposition, surprise or accident, as those terms are understood in the law. Absent such features and present a fair, plain contract, one complete and certain in terms and intendments, specific performance goes as a matter of right. The most direct and satisfactory remedy which a party instinctively seeks is specific performance when he is injured without fault on his own part by the non-fulfillment by the other party of an agreement explicit and just in its terms, relating to a sale of real estate. [Woodbury v. Gardner, 77 Me. l. c. 69; Kirkpatrick v. Pease, 202 Mo. l. c. 493-4.]''

To the same effect are the holdings in Campbell v. McLaughlin, 205 S. W. 18, and in Edwards v. Watson, 258 Mo. l. c. 646; where to like effect, Kilpatrick v. Wiley, 197 Mo. 172, and Kirkpatrick v. Pease, 202 Mo. 493, and other cases, are cited with approval. The allegations of the petition set up a contract certain and definite, valid on its face, and its violation by defendant. Upon this

plaintiff had the right to invoke action by the court requiring specific performance; the right calling for the exercise by the court of a sound, a judicial discretion, upon the facts shown; and the action to be the result of the exercise of that discretion upon the facts and circumstances shown.    The evidence shows plaintiff and defendant negotiating and contracting upon equal terms, and that the contract was not procured by fraud or misrepresentations of plaintiff.   The right of the plaintiff therefore was one within the rule that has been laid down by this court upon that subject, unless it must be said that there were such other circumstances showing a bargain so one-sided and inequitable that a court of equity must decline to enforce it.   Defendant urges that it is fairly inferable that plaintiff's farm at the time of the trial was not worth more than the encumbrance against it.    There was no evidence of its value at the time of the trial, and its value at the time the contract was made was the pertinent question.   Connected with the foregoing, counsel for defendant, also urge that the Ryan Building in Warsaw was worth from $4000 to $5000 above the encumbrance, and that in consequence the decree would result in giving to plaintiff the Ryan Building without the payment of anything in money or property. There is in the record no evidence of the value at any time of the Ryan Building, except the agreed price stated in the contract.   The agreed price of plaintiff's farm, $12,000, less the encumbrance of $5500, left an agreed net value of $6500.   The agreed price of the Ryan Building, $9000, less the encumbrance of $5000, left an agreed net value of $4000, or, an agreed difference of value between these properties of $2500.

The money judgment, as rendered by the court, would equal the agreed difference between the value of the farm and of the Ryan Building and the sum of $815.73 reached by the court after adjusting the respective receipts and payments had or made by the parties attributable to these properties.   The decree as thus made eliminated recovery of any element of damage resultant

upon the sale of the equity in the Fristoe property, and from the sale by defendant of his interest on the goods and fixtures. By a *remittitur* of $500 the judgment against defendant was reduced to $2815.73.

The plaintiff was entitled to ask performance of the contract as to the Ryan Building, a part of the contract which defendant had power to perform. "A vendee may have performance of the part that can be performed and his damages for the part not performed if he choose that course." [Coal and Iron Co. v. Long, 231 Mo. l. c. 613. See also Duvall v. Tinsley, 54 Mo. 93.] The defendant, after the overruling of his demurrer asserting that various causes of action were improperly joined in the same court, answered. The original petition is not shown. At the time of filing the amended petition the defendant still owned the Fristoe property, and still owned his interest in the stock of goods and fixtures, but it is alleged that he had continued to sell the goods, that their situation had changed, and they would be of little value to the plaintiff. Pending the suit the defendant sold his interest in the goods and fixtures, and permitted the Fristoe property to be sold. The plaintiff had one cause of action—the right to have the contract enforced. The right to damages for the disposal of certain portions of the property by defendant after institution of the suit, making complete performance impossible, was incidental to the right to enforce the contract.

It is urged that the court erred in undertaking to enforce a contract which agreed to convey defendant's interest in a partnership, in the goods and fixtures, and that the contract in respect of that sale was

Stock of Goods.

void under the "Bulk Sales" law. [Sec. 2286, R. S. 1919.] The defendant could convey his interest in the partnership property, but, subject of course, to the rights of creditors, and of the other partner to have the property subject to the partnership debts, and the right of the other partner to declare a dissolution of the partnership. Under the Bulk Sales law the sale or trade, "of the major part in value or the whole of a

stock of merchandise,'' without compliance with the terms
of Section 2286, is void as against creditors of the vendor,
but it is not made void as between the vendor and vendee.
In this case, under the contract, the defendant assumed
to make effectual the sale of a one-half interest, and the
plaintiff agreed to pay so much of the cost price of goods
and fixtures as remained unpaid. These issues were not
raised by the answer. The decree does not attempt to
enforce the contract as to the goods and fixtures. That
property was sold by defendant before the trial. Upon
the trial, as the record shows, the plaintiff disclaimed
any demand for damages upon that account. The in-
terest in the goods and fixtures therefore does not enter
into the decree as a part of the special enforcement of
the contract, or as an element of damages allowed.

The defendant offered to show that ''the earnings of
his wife were invested in the property; that by an agree-
ment between them it would be an interest in the prop-
erty of a value of $1725; and that $1725 was the amount
that his wife Maggie N. Balke, had invested in
the business and property.'' Upon objection by
plaintiff the court excluded that evidence. The
defendant's wife was not a party to the contract, and
was not a party to the suit. It was not shown that pre-
vious to the filing of defendant's answer the plaintiff
had any notice of any claim of defendant's wife to an
interest in the property, through the means alleged in
the answer. That the legal title was in the defendant
was not disputed. It was shown that she accompanied
the defendant upon his first examination of plaintiff's
farm, and it was alleged in the answer ''that upon learn-
ing the true facts concerning the land of plaintiff, the
defendant's wife refused to execute any deeds conveying
defendant's property to the plaintiff.'' In support of
his contention upon this point the defendant cites Curran
v. Holyoke Water Power Co., 116 Mass. 90, setting forth
in his brief a holding as follows:

''Before granting a decree of specific performance
the court will determine whether the rights of others, not

*Wife's Interest.*

parties, be seriously affected, and in such cases if the decree would operate inequitably upon strangers, whose rights have vested since the contract was made, the court will refuse its decree.''

That was a suit upon an oral contract which it was held did not show the definite description of the property required for a decree of specific performance by a conveyance of land. It was held also that, by inadvertence, the defendant had overlooked the interference produced by the contemplated extension of a certain street, and plaintiff had erected a building which in part intersected the proposed street as extended. The rights of the third parties arose from their purchase in good faith of lots and the erection of buildings thereon, situated with reference to the contemplated extension of the street. It was held that specific performance should be refused to the plaintiff unless he would accept a conveyance with boundaries conforming to the line of the extended street, with compensation for the land cut off and for damages occasioned by the necessity of removing his building from the limits of the street. The substance of the holding was that equity did not require that plaintiff ''should have specific performance by which he will inflict great and unnecessary injury upon other persons who are in no way responsible for the position in which he is placed.''

In this case, whatever interest defendant's wife had in the property, if any, arose before, not after the making of the contract; of which defendant must have had knowledge, and of her claim thereto. Plaintiff, at that time, had no notice. Non-action by the court upon the issue raised by defendant, as to his wife having an interest in the property, in a suit wherein she was not a party, did not affect her right; and action by the court under the situation existing, would not have done so. The court did not err in rejecting the evidence offered. The contentions made for defendant do not go to the form of the decree, nor to the correctness of the calculations

made by the court, but to the question whether the plaintiff was entitled to any relief in equity.

The judgment should be affirmed.  *Small, C.,* not sitting.

PER CURIAM:—The foregoing opinion of LINDSAY, C., is adopted as the opinion of the court. *Ragland, Woodson* and *Graves, JJ.,* concur; *James T. Blair, P. J.,* not sitting.