THE BANK OF OTTERVILLE, APPELLANT, v. THE BANK OF BOONVILLE, RESPONDENT.*

Kansas City Court of Appeals.   April 29, 1929.

---

*Corpus Juris-Cyc. References: Bills and Notes, 8CJ, section 550, p. 369, n. 15; Money Received, 41CJ, section 75, p. 68, n. 65.

*Embry & Embry* for appellant.

*Pendleton & Martin* and *Montgomery, Rucker & Hayes* for respondent.

BLAND, J.—This is an action for money had and received. At the conclusion of the plaintiff's testimony the court sustained defendant's demurrer to the evidence and judgment was rendered in favor of it. Plaintiff has appealed.

The facts show that the parties hereto are banking corporations located in Cooper county; that for sometime prior to December 4, 1925, plaintiff had been buying notes from the defendant; that shortly prior to said day plaintiff notified defendant that it desired to buy some good commercial paper; that in response to this defendant on said day sold to plaintiff a note for $5000 with accumulated interest and transferred the note to plaintiff by indorsement "without recourse." The note was signed by one E. H. Rogers as maker, who was at the time of its execution and sale a resident of Cooper county. At the time plaintiff indicated to defendant that it was in the market for some good commercial paper the latter was carrying this note as part of its bills receivable, the note having been executed in the month of November, 1925. Prior to the execution of the note defendant had Rogers make a statement of his financial condition. This statement showed liberty bonds owned by Rogers in the sum of $45,000, notes secured by real estate mortgages in the sum of $98,200, cash in the sum of $250, real estate of the value of $28,000 and liabilities in the sum of $11,000, or Rogers' net worth to be $160,000.

Rogers testified that this financial statement was drawn up by a son-in-law, one Nixon, who took it and the note to the defendant bank; that a few days thereafter the witness was in said bank and there talked to Dr. Nelson, its president, whom he told that he had "investigated" the statement before he signed it. The witness testified that at that time he did not have his "specs" on and "just looked at it;" that as a matter of fact when he signed the financial statement there was nothing in it in reference to liberty bonds or real estate; that he did not own any such bonds or real estate, but he owned the notes secured by the real estate mortgages as mentioned in the statement. The evidence shows that upon the execution of this note by Rogers he owed defendant bank the sum of $23,000 and was wholly insolvent.

Dr. Nelson testified that Rogers took the financial statement and apparently read it over and laid it on the witness' desk and said "yes, that is all right;" that he made no further inquiry as to the correctness of the statement or any in reference to Rogers' financial standing; that he had known Rogers many years and knew him to be a man reputed to be well off; that he did not ask Rogers to produce the bonds for verification of the witness, or ask him where they were, or to produce the real estate notes for the inspection of the witness.

The cashier of defendant bank testified that he made no investigation of Rogers' financial condition at the time the note was signed; that Dr. Nelson took the statement from Rogers and that the witness relied upon this statement; that the note in question was executed by Rogers without the witness making any examination in regard to the correctness of the statement; that he considered Rogers a truthful man. There was other testimony that Rogers was reputed to be a man of more than moderate wealth.

Plaintiff's president, Mr. Gunn, testified that he knew Rogers and knew "he was a man who some years back had been considered a man of considerable means, not exactly wealthy," but worth more than $5000; that he had not heard anything to the contrary at the time his bank purchased the note in question.

When the note became due plaintiff sent it to defendant "for collection and credit" with a notation on the remittance sheet that "we can use again if you take renewal." There is evidence tending to show that the note was not sent back for the purpose of defendant taking a renewal thereof in favor of plaintiff, but to collect the note and remit the proceeds to the plaintiff; that if defendant desired to renew the note on its own account plaintiff was willing to purchase the renewal note. The note was renewed by the defendant on May 3, 1926, and the new note was sold by the defendant to the plaintiff and indorsed "without recourse" by the former to the latter. Defendant's cashier testified that at the time the note was renewed he made no further investigation as to the financial standing of Rogers but renewed the note upon the strength of the written statement that Rogers had made in November, 1925.

Plaintiff brought suit against Rogers, obtained a judgment upon the renewal note but was unable to collect any part of the same and brought this suit against the defendant for money had and received after having tendered the note back to defendant.

It is claimed by the plaintiff that the defendant was guilty of fraud in these transactions. It seems to be the contention of the plaintiff that if defendant knew or by the exercise of ordinary care could have known that Rogers was insolvent then it is liable; that defendant was guilty of negligence in taking the original note and the renewal thereof, in that, it did not require Rogers to produce the bonds and other evidences of his wealth; that defendant should have made further inquiry as to Rogers' financial standing.

In the sale of a negotiable instrument indorsed by the seller "without recourse" the rule of *caveat emptor* applies in the absence of a fraudulent representation or concealment by the seller as to the value of the paper, including the solvency of the maker. [Beckwith v. Farnum, 5 R. I. 230; Read v. Hutchinson, 3 Campbell, 352.] In the case at bar there was no representation as to the solvency of the maker and defendant must rely upon concealment of the defendant

of the knowledge, if any, it had in reference to the solvency of Rogers. It has been held that it is not only the duty of the vendor to impart to the vendee any actual knowledge he may have of the solvency of the maker of the note but knowledge of any fact which tends to show the worthlessness of the paper. [Gordon v. Irvine, 105 Ga. 144, 147.] In the case last cited, l. c. 150, the court quoting from an earlier Georgia case stated:

" 'That notice is sufficiently actual which, by the proof either positive or presumptive, brings home to the purchaser such knowledge of the circumstances as authorizes the clear and satisfactory conclusion that he had notice of the prior encumbrance, or such as renders proper the conclusion that he was, or should have been, put upon inquiry.' Such notice is, in the language of Sir Edward Sugden, 'good notice,' and is so, because it authorizes a conclusion which affects the conscience of the purchaser, and makes it a legal fraud in him to buy under the circumstances. If, under such notice, he afterwards buys, *male fides* marks the transaction.' "

In this quotation the court speaks of notice to or knowledge of the purchaser but the same rule applies to knowledge on the part of the seller. The seller, however, is not required to impart a vague conjectural suspicion of insolvency of the maker of a note. [Burgess v. Chapin, 5 R. I. 225, 228.]

Plaintiff is under a misapprehension in claiming that if there were any circumstances in connection with the making of the loan to Rogers to cause defendant to inquire about Rogers' financial condition and that defendant failed to do so, it was guilty of negligence. Defendant was not required to make any inquiry, but was under the duty to make known to plaintiff only such information that it had, if any, which tended to show the worthlessness of the paper. [Beckwith v. Farnum, supra; Gordon v. Irvine, supra; Burgess v. Chapin, supra.]

The evidence is undisputed that the defendant had no knowledge at the time of the execution of the notes and their transfer to plaintiff of the insolvency of Rogers, or any circumstances tending to show that the paper was worthless. There was nothing about the transaction that would put defendant upon inquiry as to this matter. It loaned Rogers $23,000 believing him to be solvent. We have examined the cases of Clifford Baking Co. v. Donovan Com. Co., 195 Mo. 262, 288; Mitchell v. Newton County Bank, 282 S. W. 729, 732, and other cases cited by plaintiff and find them not in point.

Plaintiff also relies on section 851, Revised Statutes 1919, providing, among other things, that every person negotiating an instrument by delivery or by qualified indorsements warrants "that he has no knowledge of any fact which would impair the validity of such instrument or render it valueless." However, as we have before stated there was no evidence of any knowledge on the part of the defendant

of any fact which would render the note valueless or, in other words, that Rogers was insolvent.

It appears that there is in the hands of the defendant notes of Rogers of the face value of $30,000. Defendant holds these notes as trustee for itself, the Bank of Pilot Grove and the plaintiff, under an agreement that defendant will collect what it can upon these notes and distribute the proceeds to itself and the other two banks. The evidence shows that defendant has collected $10 upon these notes; and plaintiff insists that the court erred in sustaining the demurrer to the evidence for the reason that it is entitled to recover its part of the $10. It is quite apparent that the petition is not founded upon such an agreement and this matter is entirely foreign to the issues. How much of any money collected or to be collected it is or will be entitled to is not shown. In other words there are not sufficient facts developed upon which this court could intelligently pass upon the matter even were it an issue.

It is claimed that the answer admits that the defendant received the money mentioned in the petition for the use of the plaintiff, and merely denies the date upon which it was received and, therefore, the demurrer to the evidence should not have been sustained. The answer denies the allegations of the petition in the words of the petition, that is to say, the first count of the petition alleges that on December 4, 1925, "defendant received from the plaintiff the sum of $5031.11 to and for the use of the plaintiff." The second count alleges that "on or about the 4th day of May, 1926, the defendant received from the plaintiff the sum of five thousand dollars to and for the use of plaintiff." The answer denies that either on the 4th day of December, 1925, or the 4th day of May, 1926, "the defendant received from plaintiff the sum of $5031.11 to and for the use of the plaintiff."

While the answer contains what is known as a negative pregnant such a pleading is generally considered in this State as going merely to the form of the pleading, unless a case is presented in which the answer must be fairly regarded as ambiguous and misleading. [Merchants National Bank v. Richards, 74 Mo. 77; Wynn v. Cory, 43 Mo. 301; Law v. Crawford, 67 Mo. App. 150, 153, 154; Section 1257, R. S. 1919; Pattison on Code Pleading (2d), sections 223, 224, 611, 612.] It is held that a general denial in the language of the petition is sufficient to deny *in toto* the allegations contained in such language of the petition. [First National Bank v. Hogan, 47 Mo. 472; Pattison on Code Pleading (2d), p. 544.] We are of the opinion that plaintiff was not misled by the form of the denial in this case. [31 Cyc., p. 203.]

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.