STATE OF MISSOURI at the Relation of C. F. PLACE, Relator, v. HONORABLE EWING C. BLAND, HONORABLE NICK T. CAVE and HONORABLE SAMUEL A. DEW, Judges of the Kansas City Court of Appeals.— No. 39169.—183 S. W. (2d) 878.

Court en Banc, November 6, 1944.

Rehearing Denied, December 4, 1944.

*Eugene C. Kane* and *Walter J. Gresham* for relator.

*Arthur B. Taylor* and *Walter A. Raymond* for respondents.

642

ELLISON, J.—Certiorari to the Judges of the Kansas City Court of Appeals bringing up the record in Place v. Parker, 180 S. W. (2d) 538. The cause had been tried by the Jackson county circuit court and appealed to that Court of Appeals, where it was determined last April. The petition for our writ makes two assignments: (1) that the Court of Appeals had no jurisdiction of the appeal because the title to real estate is involved within the meaning of Sec. 12, Art. VI, and Sec. 5, Amendment 1884, Constitution of Missouri; (2) that respondents' opinion contravenes controlling decisions of this court, and therefore is subject to review by this court under its power of superintending control, granted by Sec. 3, Art. VI of the Constitution.

If the first of these assignments is good, this court, and not the Court of Appeals, has had exclusive appellate jurisdiction of the case from the beginning. In event of that finding by us the parties have agreed to submit the cause here on the merits, on their briefs filed in the Court of Appeals and without further oral argument. Further, in that event, the question whether the opinion of the Court of Appeals contravened controlling decisions of this court would pass out of the case, because the whole opinion would be discarded; and we would consider those decisions only as they may bear on the conclusions we reach. We have decided the controversy does involve the title to real estate and that we have original jurisdiction of the appeal. So we discuss first the facts and law with special reference to that issue. The general facts are more fully stated in respondents' opinion, cited in the beginning.

The case originated in a suit filed by relator in the circuit court of Jackson county on October 16, 1942. It was a straight suit on a promissory note for $775, dated April 25, 1941, bearing 8% compound interest. The recitals in the petition were limited to that, except that it charged the note was secured by a chattel mortgage on 75 hogs; and that the defendant had disposed of the hogs for the purpose of avoiding payment of the note and to hinder and defraud relator. Just why these extraneous allegations were inserted in the petition we do not know, for the prayer seeks only a judgment on the note, and costs. At any rate, thus far there was nothing in the case which would give this court appellate jurisdiction, the monetary amount involved not exceeding $7500, as required in such cases. Sec. 12, Art. VI; Sec. 3, Amendment 1884, Constitution, supra; Sec. 2078, R. S. 1939, Mo., R. S. A., sec. 2078.

But the defendant filed an answer praying equitable relief. It admitted the execution of the note (and chattel mortgage) but pleaded payment thereof on August 17, 1942, before the suit was brought, by and through the execution of a written contract between the parties dated that day and afterwards orally modified. Preliminarily, it may be stated the contract provided for the sale of certain realty and personalty by defendant to the relator, the note sued on to be credited on the purchase price. The main question in the case is whether that modified contract is valid and can be enforced by specific performance.

There were several pages of affirmative allegations in the answer with respect to the alleged contract, which was set out as an exhibit. The contract was for the sale by defendant and his wife to relator and his wife of 20 acres of land in Jackson county; an International truck; a Ford truck; and a steam boiler located on the land. The consideration to be paid by relator was $5900, as follows: $1500 cash down; relator to cancel the $775 note sued on plus $80 earned interest, making $855; and to assume a $900 mortgage on the land, as part of the purchase price.

All this would leave a balance of $2645 due from relator to defendant, but the contract pleaded in this answer did not so recite. In an amended answer, to be referred to later, the contract is again set out, showing an added fourth paragraph requiring relator and his wife to execute a note for the $2645, payable "Two Hundred Twenty and no/100 Dollars ($250.00) monthly." There is also an added clause with respect to the assignment of outstanding insurance to relator, reimbursement of defendant for unearned insurance premiums paid by him, and assignment of "bonds now in force." It appears from the evidence that this latter refers to surety bonds given by defendant to the City of Independence as city garbage hauler, to which business relator was to succeed. However, the scrivener's testimony shows these additions to the written contract were agreed upon by the parties. The contract pleaded in the first answer was expressed to be between

the relator and the defendant and their respective wives, but no signatures are shown except that it is acknowledged by the husbands only. The contract set out in the second answer is signed and acknowledged by the two husbands, but there are blank lines for the signatures of the wives.

Without attempting to set out all the detailed provisions of the answer, it may be said that it counts on the aforesaid written contract and three subsequent oral agreements extending, modifying or reviving it. The first oral extension, made about the time of the execution of the written contract, covered additionally the sale of certain hogs by defendant to relator for $500, of which $250 was to be paid by relator in cash along with the $1500 cash payment due under the written contract, making $1750. The remaining $250 was to be paid by an installment note for that amount, called the "hog note", and secured by a chattel mortgage on the hogs.

It is alleged that when this oral agreement was made relator executed and delivered to defendant the hog note and chattel mortgage, and defendant assigned to relator the title certificates to the two trucks called for by the written contract and delivered possession thereof to him, this in reliance on relator's performance of both the written and oral contract. However, defendant remained in possession of the 20 ▮▮▮▮▮ acres (as he did throughout), and was not to deliver his warranty deed therefor and a bill of sale for the boiler until relator had paid the $1750, executed the $2645 note, and otherwise performed both contracts on his part. In this particular the oral contract introduced a new feature, namely that relator was to execute a second deed of trust on the 20 acres and a chattel mortgage on the two trucks and boiler, to secure payment of the $2645 note.

The second oral modification of the previous two contracts allegedly was made very soon thereafter, in this way. Relator notified defendant he was unable to make the $1750 cash payment, but offered to pay one-half thereof, $875, and to pay the remaining half within a few days, at which time all the foregoing necessary papers would be completed. Defendant consented and relator paid the first $875, but failed and refused to pay the remaining $875; and on August 22 relator returned the two trucks to defendant, the intention of both parties possibly being to rescind the prior contracts and abandon the whole transaction—though the answer does not allege that.

The third alleged oral modification of the written and oral contracts was as follows. On October 15, relator, first offering to pay $200, fraudulently induced the defendant to reopen the previous contractual arrangements, and to accept his (relator's) check for $500, to apply on the second down payment of $875. Relator was further to complete the sale papers the next day, and to add to the deferred balance due: the sum of $375 representing the part of the second $875 still unpaid; also $120, the price of three new tires which had been

placed on the trucks; and the (unspecified) increased value of the hogs due to the farrowing of sows during the intervening time up to October 16, 1942.

Defendant agreed to this, returned the two trucks to the relator and accepted relator's $500 check, but relator stopped payment on the check at the bank the next day, October 16, this being the day on which he brought the original suit on the note. Relator also failed to carry out the amended contract in all other respects and the defendant this time "took" possession of the two trucks, but did not get the title certificates thereto after demand. Relator brought two replevin suits on the same day, October 16, one to recover each truck, which the answer below alleged were still pending in justice court; and that defendant could not defend against the replevin suits because relator still had his title certificates to the trucks. All these acts of the relator are alleged to have been fraudulent and to deceive the defendant.

The relator filed a reply admitting a written contract was drawn up as alleged in the answer, but denying it was executed by the necessary parties (the wives of the two parties); and denying there was any oral contract between the respondent and the defendant, as alleged, for the purchase of the hogs. It further alleged that the trucks were understood to be relator's all the time, and that while defendant used them it was with relator's consent. There is an allegation that relator stopped payment on his $500 check because he had heard from a reliable source that defendant was moving the hogs from the land. The reply throughout is directed to the controversy over the two trucks, and the replevin suits, though it is alleged that after the relator had paid the defendant the first $875 and had received the two trucks and their titles, he was advised that the land contract could not be carried out for want of the consent of the wives of both parties, whereupon he tendered the trucks back and demanded the return of his $875, which tender and demand were refused. It is further alleged the plaintiff took the trucks from relator's driver by force, which prompted him to bring the replevin suits.

The defendant's amended answer, heretofore referred to, was an "amended answer to plaintiff's reply to defendant's answer." It was filed on November 21, 1942, eleven days after the court had heard the cause on November 10, and the court overruled relator's motion to strike it out. This so-called amended answer contained first a general denial. Then, in nearly three pages of the abstract, it restates the facts substantially as in defendant's original answer.

The prayers of defendant's original and amended answers were practically the same, except for the transposition of words and phrases, down to a certain point. Quoting both substantially that far, they ran as follows (italics ours): "Wherefore, this defendant prays the court that by reason of the fraudulent acts and promises of the plaintiff

which were acted upon by defendant, relying on said promises, by delivering to the plaintiff the titles to two motor trucks heretofore referred to, and [883] that said defendant has no complete and adequate remedy at law to defend said replevin actions or to get the titles to said motor trucks back into his possession and in his name, that the court order the plaintiff to *return the said motor trucks,* described in said 'Sale Agreement' hereto attached, to the defendant *until* the plaintiff completes his contract entered into with the defendant as heretofore set-out, *or* that *upon the failure* of the plaintiff to carry out the contract as entered into, and as heretofore set-out, . . . ''

From there on the prayer of the original answer asks that the court declare the contract at an end and that the title to the two trucks be vested in defendant, and for general relief. From the same point on, the prayer of the amended answer asks that the court declare relator's $775 note originally sued on, and the first $875 cash paid by him, both be forfeited as liquidated damages; that the titles to the two motor trucks be vested in defendant; and for general relief.

The prayer of the relator's reply is as follows: ''Wherefore Plaintiff (relator) prays the court to consider and adjudge the matters and things between plaintiff and defendant and to take full and complete jurisdiction of all things entering into the controversy between plaintiff and defendant, and to order and adjudge their rights. Plaintiff further prays for a judgment against the defendant herein (on the note); and that the court order and decree the defendant pay to this plaintiff the sum of $875, plus interest,'' and for costs and general relief.

The cause. was tried in equity before Hon. Harvey Burrus, sitting as special judge, and by agreement the aforesaid replevin suits were included, they apparently having by that time been appealed to the circuit court. At the beginning of the trial both parties announced that ''by agreement, all matters and things between these two parties are placed in the jurisdiction of this court.''

The trial court's decree adjudged that defendant ''have executed and deliver'' to relator a .warranty deed for the twenty acres, and extend the payment of the $250 ''hog note'' to January 1, 1943. Reciprocally, it ordered that upon delivery of the warranty deed and the extension of the hog note, the relator pay the defendant: $500 in cash; deliver to him ''his'' (relator's) promissory note for $3141 with 6% interest, dated October 15, 1942, payable $220 monthly, beginning Feb. 1, 1943, secured by second deed of trust on the land and a chattel mortgage on the two trucks; and that relator surrender to defendant the $775 note in suit. Alternatively, the decree adjudged that upon relator's failure to meet the foregoing requirements: the aforesaid $775 note in suit be cancelled; that both said note and the first cash payment of $875 made by relator be forfeited to defendant; that the titles to the two trucks be vested in defendant; and that

relator assign to the defendant the title certificates covering the two trucks and return the trucks to him, otherwise execution to issue.

It is evident that the decree seeks to enforce both the written contract and the three oral modifications thereof—except as to the increased value of the hogs, which was left out, and that the cost of the three tires was fixed at $121 instead of $120. The $2645 note was increased to $3141 to cover the $375 still due on the second cash payment of $875, and $121 for the three truck tires. But the defendant was not required to deliver to the relator possession of the land, the boiler, and the hogs. The accounting theory of the decree was as follows:

| Due from relator to defendant | Credits allowed and payments required |
|---|---|
| Contract price of land ........$5900 | Cancellation of $775 note & int. $855 |
| Down payment due on hogs ... 250 | Assumption of mtg. on land .... 900 |
| Hog note ................... 250 | First ½ of $1750 pd. in cash ... 875 |
| Three new truck tires ........ 121 | Cash payment as per decree ... 500 |
| | Extension of hog note ........ 250 |
| | Note ordered by decree ........3141 |
| $6521 | $6521 |

The Court of Appeals opinion [180 S. W. (2d) l. c. 543-4 (1, 2, 3)] found there was no meeting of minds of the parties on October 15 with respect to the third oral modification of the previous contracts, whereby relator was to give defendant his check for only $500, and increase his note indebtedness from $2645 to $3141. It was accordingly ruled that specific performance, if any, must be restricted to the written contract of August 17, and the first ▮ and second modifications thereof, prior to that of October 15. But the opinion further held plaintiff was precluded by these contracts from obtaining judgment on his $775 note and recovering his first cash payment of $875. However, the Court of Appeals merely reversed and remanded the cause without enforcing a specific performance to the extent thus apparently held allowable.

▮ On the question of appellate jurisdiction in this court, which in turn depends on whether the title to real estate is involved, it must be conceded that so far as the pleadings are concerned there is only weak support for an affirmative view. Neither the original petition on the note nor the reply filed by relator expressly puts title in issue, though the latter did pray that the court "take full and complete jurisdiction of all things entering into the controversy between plaintiff and defendant, and order and adjudge their rights." But the only specific judgments prayed were money judgments on the $775 note sued on, and for recovery of the first $875 cash payment made by relator. And the defendant's original and amended answers mainly sought return of the two trucks *until* relator carried out his contracts. The further relief prayed in the original answer was that the contact be declared at an end, and that title to the trucks be vested in defendant and for general relief. The amended answer further prayed

that the $775 note and the first payment of $875 both be forfeited as liquidated damages; and for general relief.

But regardless of the form and sufficiency of the pleadings, if the circuit court's decree did decide a title controversy in the sense of taking title from one and awarding it to another, title was involved. State ex rel. Brown v. Hughes, 345 Mo. 958, 961(4), 137 S. W. (2d) 544, 545(5, 6). And an action for specific performance of a contract to convey land involves title even when brought by the vendor against the purchaser, as here. Rice v. Griffith, 349 Mo. 373, 376(1), 161 S. W. (2d) 220, 221(1). In other words the court has power to force the title on the purchaser by its decree without a deed. Eisenbeis v. Shillington, 349 Mo. 108, 113(1), 159 S. W. (2d) 641, 643(1). Our statute, Sec. 1255 so provides. See also 58 C. J., sec. 76, p. 917.

In this case, however, the trial court did not exercise that power mandatorily. It decreed that the defendant and his wife (who were willing) execute and deliver to the relator a warranty deed covering the 20 acres; and that the relator pay defendant the contract consideration and give security in a manner specified. But next, the decree alternatively provided that *upon failure* of the relator to do those things, the $775 note sued on was "herewith" cancelled and the $875 cash payment previously made to defendant by relator was "herewith" forfeited; along with certain other mandatory provisions about the two trucks. In short, the decree appears to give relator an *option* about conveying the land subject to certain penalties if he fail to do it.

Nevertheless, we think that option did not deprive this court of appellate jurisdiction; and that respondent errs in contending to the contrary. Both alternatives in the trial court's decree were based on the theory that relator was legally obligated by his contract to purchase the land. He resisted both alternatives and still does here. Since the decree ordered specific performance of his contract to purchase the land from respondent, it cannot be denied that title was that far involved. And while the decree was expressed to operate contingently, yet if the alternative was (as it might be) so onerous as to be coercive, in practical effect it amounted to enforcing performance. In this case the jurisdiction of the Court of Appeals was governed by the nature of the decree below, regardless of the imperfections in the pleadings. Undoubtedly, a Court of Appeals would not have constitutional power to affirm or enforce specific performance of a contract to buy or sell land, even contingently. And if it could not rule one way on that question, it could not rule the other. It would have no power at all except to reject or transfer the case. So appellate jurisdiction *must* be vested in this court.

We find no precedent exactly in point. The nearest is Brewster v. Terry (Mo. App.), 172 S. W. (2d) 5. There, the plaintiff alleged he had conveyed land to a decedent by a deed absolute on its face but

actually as security for a debt; and that the decedent had sold the land to an innocent third party, thereby making redemption impossible. So he prayed an accounting of his debt, an appraisal of the value of the land, and a money judgment for the difference. The defendant widow and executrix answered that the land had been deeded to the decedent absolutely in settlement of the plaintiff's debt; but that she had become the owner of the land and would deposit a deed thereto in court and make an accounting of the farm income and the debt; the deed to be delivered to plaintiff upon payment by him of the amount found due on his debt; otherwise the fee simple title to be retained by the widow and vested in her by decree. The trial court so ordered. In other words the decree was conditional. The plaintiff appealed to the St. Louis Court of Appeals, which transferred the cause to this court because the title to real estate was involved. We accepted jurisdiction and decided the cause, 352 Mo. 967, 180 S. W. (2d) 600.

So also, Herriman v. Creason, 352 Mo. 1176, 181 S. W. (2d) 502, 503(1), recently decided by this court en banc, was a suit brought by H, a judgment creditor of C, to set aside as in fraud of creditors a deed made by C to his wife; and to subject the land to the lien of H's judgment, so far as necessary to permit a foreclosure of that lien by a sale of the land as the property of C and application of the proceeds to H's judgment debt. It was held the action involved title in a constitutional sense because it sought a transference of the land title from C's wife back to C for the purposes of foreclosure, although the wife could have prevented the sale and retained her title after rendition of the decree, by paying off the judgment debt and costs. In that sense a contingency entered into the Herriman case. We think these decisions and sound reason show that title is involved where it is taken from one and vested in another even subject to a contingency. Of course this does not apply to the mere foreclosure of liens on land where the defendant's title thereto is undisputed, and the question is merely one of enforcing the lien.

 Having reached the conclusion that appellate jurisdiction is in this court, we must pass on the merits of the case. The first assignment in relator's brief as appellant in the Kansas City Court of Appeals, was that the trial court erred in refusing to strike defendant's "amended answer to plaintiff's reply to defendant's answer." Counsel for defendant below, and for the respondent judges here, tacitly concede the contention is good, but say the error was harmless under Secs. 973 and 1229, R. S. 1939 and Mo., R. S. A., which require courts to disregard any error or defect in pleadings not affecting the substantial rights of the adverse party or the merits of the cause.

The amended answer to the reply had no place in the case since our practice does not contemplate a rejoinder to a reply. Secs. 915, 931, 952, R. S. 1939 and Mo., R. S. A. But without it there was no

specific prayer on behalf of defendant for performance of the contract. Indeed, even the amended answer merely prayed that *if* the plaintiff *failed* to carry out the contract, liquidated damages be awarded. It did not in terms ask for specific performance. However, there was a prayer for a general relief in both answers. And in view of the crude pleadings; the allegations of fact contained therein; the joint announcement of counsel inviting a determination of *all* the rights of the parties; and the latitude allowed courts of equity in awarding relief under a general prayer when the pleaded facts warrant it—in view of all these things we think the original answer furnished a sufficient basis for *a* decree of specific performance, even though the amended answer be disregarded. 49 C. J., sec. 190, p. 176; 58 C. J., sec. 504, p. 1170; sec. 579, p. 1228; sec. 581, p. 1230.

The next assignments, consolidated broadly charge that the trial court erred in granting to the defendant equitable relief by way of specific performance. Relator's basic contention is that since the parties orally modified the original written contract for the sale of the land, the whole agreement must be regarded as resting in parol, Boyd v. Camp, 31 Mo. 163, 165; and therefore violates the statute of frauds, Sec. 3354, R. S. 1939 and Mo., R. S. A. The defendant contends reliance on that statute is an affirmative defense, and that relator did not plead it or even object to the introduction of evidence on that ground—that it was never mentioned during the trial.

Relator maintains he did plead that defense by denying in his reply to defendant's original answer "that there was a contract executed on the 17th day of August, 1942, between the parties named in the contract set out by the defendant for the purchase and sale of certain real estate" though the reply further admitted "such a contract was drawn up, but was not and has not been executed by the necessary parties thereto"; and by further alleging in the reply "that there was no contract, oral or otherwise, between this plaintiff and defendant named in said contract for the purchase and sale of certain shoat-hogs as alleged in defendant's answer."

It will be observed these denials in relator's reply were very obscure and guarded, and came close to being negatives pregnant, admitting facts not explicitly denied.[1] The part dealing with the written contract conceded it was *"drawn up,"* but not *"executed* by the *necessary* parties thereto."* At the trial relator admitted he and the defendant had both signed the contract, and relied on the fact that their *wives* had not. With respect to the oral contract for the purchase of the hogs, the reply merely denied that any contract had ever been made "as *alleged* in defendant's answer."

[1]28 Words & Phrases (Perm. Ed.), p. 312; Breckenridge v. Am. Cent. Ins. Co., 87 Mo. 62, 69(IV); Bank of Otterville v. Bank of Boonville, 223 Mo. App. 572, 576(7), 16 S. W. (2d) 702, 704(7).

We think defendant is right in contending there is nothing in the reply explicitly invoking the statute of frauds, Sec. 3354, supra, on the grounds urged now. On the other hand, if we grant the reply amounted to a general denial, relator is right in asserting he was not precluded by that fact alone from relying on the statute. The rule, as we understand, is that if the party to be charged deny by his pleading that a contract was made, then he can invoke the statute by objection to the introduction of oral evidence of the contract, or sometimes by instructions (though the issue ought to be *timely* raised). If he admits in his pleading that the contract was made, then he must also allege that it was oral and violated the statute.[2] In the instant case relator did not do that, and no objection was ever made to the introduction of oral evidence about the contract. The statute was not mentioned, even in relator's motion for new trial. Consequently, we think that defense is not open to him now.

██ The next assignment by relator here and also in the Court of Appeals is based on these facts. The defendant by his pleading and trial theory sought to recover on the written contract of August 17 and the three oral modifications thereof, including the last one of October 15, all as merged into a single oral contract. And the trial court granted him specific performance on that theory, except that it did not allow him anything for the increased value of the hogs due to the intervening farrowing of pig litters. But the respondent judges of the Court of Appeals rejected altogether this last modification of the contract, on the ground that there had been no meeting of minds as to it; and yet nevertheless validated the previous written and two oral contracts, though it did not enforce them. Relator maintains this was error on the part of both of these courts.

As to the Court of Appeals opinion, relator concedes the respondent judges ruled correctly in holding there was no meeting of minds on the last modification of the contract on October 15—and therefore a total failure of proof on that issue. But he contends this brings into play the principle that when a party relies on a modified contract he must plead and *prove* both the original and the modified contract, which involves an *abandonment* of the original contract, standing alone; and if he fails in his proof of the modification, then he has failed altogether and cannot go back to the original contract (or contracts, in this case) as the sole basis for recovery. Hence he maintains the respondent judges erred in validating the written contract of August 17 and the two modifications prior to October 15, but rejecting the third modification of the latter date; and that the trial

---

[2]Devore v. Devore, 138 Mo. 181, 185, 39 S. W. 68, 69; Smith v. Hainline (Mo., banc), 253 S. W. 1049, 1052(3); Long v. Conrad (Mo., Div. 2), 42 S. W. (2d) 357, 361 (4); Jones v. Jones, 333 Mo. 478, 487(3), 63 S. W. (2d) 146, 150-1(7, 8), 90 A. L. R. 219; Major v. St. L. Union Trust Co. (Mo. App.), 64 S. W. (2d) 296.

judge erred in enforcing all these merged contracts *in part,* but omitting the increased value from hog litters in the third modification. Relator's legal contention on this point seems to be correct.[3]

Furthermore, we think the factual conclusion reached by the respondent judges of the Court of Appeals was right, that there was no meeting of minds on the third oral modification of October 15. It will be remembered the defendant's answer pleaded the relator agreed on that date to carry out the previous agreements if permitted to reduce his second cash payment from $875 to $500, and to add the difference of $375 to his $2645 note, along with $120 for three new truck tires and the unspecified increase value of the hogs from pig litters up to that date. The answer further alleged that in reliance on that agreement defendant redelivered the two trucks to relator. But at the trial the relator denied this (except receipt of the trucks), testifying that the $500 was paid only to discharge in full his debt for the hogs he had bought back in August, and to take up his $250 "hog note."

The defendant disputed that, saying the $500 was a payment on the combined land-truck-hog contracts. Yet he admitted that when he received relator's check for the $500 on October 15 he merely told relator he "had put" $120 in truck tires; that he wanted "some adjustment" for the increased value of the hogs due to the pig litters; and that relator answered they "would get to" those items the next day when they met at the scrivener's office; and "would make arrangements about the tires and about the difference in value of the hogs." And defendant further conceded they never did come to any agreement on what the price of the young pigs would be. Early the next morning relator stopped payment on his $500 check, the parties did not meet at the scrivener's office, and the litigation started. Certainly this was an admission that there was no definite agreement on *these* items; and consequently there was, that far, no contract. Kludt v. Connett, 350 Mo. 793, 801(1), 168 S. W. (2d) 1068, 1070(1), 145 A. L. R. 1014, 1019. But there was an agreement to agree, with part performance by delivery of the $500 check.

In these circumstances we remain unconvinced that the facts deprive defendant of his remedy of specific performance of the written and oral contracts so far as proven. The evidence is clear that relator did agree to go ahead with the contracts if allowed to reduce his second cash payment from $875 to $500, the difference to be added to his note and the other two items to be adjusted. When relator gave defendant the $500 check, he had already previously paid him the first

---

[3]Koons v. St. L. Car Co., 203 Mo. 227, 259(V), 101 S. W. 49, 58-9(5); Mt. Vernon Car Mfg. Co. v. Hirsch Rolling Mill Co., 285 Mo. 669, 693(II), 227 S. W. 67, 74(4, 5); Priest v. Oehler, 328 Mo. 590, 602(III), 41 S. W. (2d) 783, 788(7-9); Carman v. Harrah, 182 Mo. App. 365, 376, 170 S. W. 388, 392-3(3).

$875 under the second modification of the original written contract. This $875 was one-half of the $1750 cash payment due from him under the first modification of that contract, which payment included the $1500 down payment on the land and the $250 down payment on the hogs. In other words the $875 payment represented one-half of each of these items, and therefore $125 of it was on the hog debt. This being true, relator would hardly have given defendant the $500 check on October 15 as full payment for the original price of the hogs, when he had already paid $125 on them. And if they were dealing only on the hogs, why did relator first offer only $200.

Furthermore, if the land-truck contract had been abandoned but defendant still had the $875 relator had previously paid him, why should relator pay him *anything* on the hogs? And why did he resume possession of the two trucks when he gave the $500 check? Relator's explanation of his reason for stopping payment of the check merely was that he had *heard* on good authority defendant was disposing of the hogs (not that the land contract had been cancelled). Yet he did not attempt to prove it, and defendant testified the hogs disposed of were three fat hogs, and not the shoat-hogs relator was to get. Relator's testimony on this issue really confirms defendant's version of the facts. He admitted that he first offered defendant $200 to go ahead with the ''whole deal.'' Defendant refused and demanded $500 or nothing. Then relator continued: ''Well, I was thinking to myself maybe I am hooked; I believe I am a sucker anyway. I might just as well go all the way now, so five hundred it was.'' Thereupon he gave the defendant the check for $500 and accepted the return of the two trucks, but welshed the next morning and stopped payment of the check.

This being true, it was relator who made full performance impossible. And while we concede the general rule that contracts must be proven as pleaded, yet we think both parties in this case joined in asking the trial court to adjudicate the cause on the *evidence*, regardless of the technical effect of the pleadings. At the beginning of the trial ''by agreement'' they requested the court to take ''jurisdiction'' of ''all matters and things between these two parties,'' including the replevin suits. Relator's reply did the same, praying even more broadly that the court ''take full and complete jurisdiction of all things *entering* into the controversy . . . and order and adjudge their rights.'' No technical objections were interposed by relator below except that he contended the land contract was unenforceable because not signed by the wives of the parties. In these circumstances we hold the trial court and this court may (so far as this point is concerned) order performance of *all* pleaded contracts to whatever extent they were proven and are valid and susceptible of enforcement. Phelps v. Scott, 325 Mo. 711, 726 (IV), 30 S. W. (2d)

71, 77(11), 71 A. L. R. 290; Oetting v. Green, 350 Mo. 457, 462(1), 166 S. W. (2d) 548, 550(1).

■ Another assignment presents relator's contention based on the ground that the written contract of August 17 made the *wives* of the relator and the defendant parties thereto, as well as themselves; that it bound both the defendant and his wife to execute the deed for the land to the relator and his wife, thus making her one of the grantees; and further required her to join in the execution of the $2645 note; and that the first oral modification required her to join in the execution of the second mortgage on the land to secure the note. But the trial court's decree merely ordered that the plaintiff alone execute the $3141 note and the second deed of trust securing it. This, says relator, is a rank departure from the terms of the contract, which cannot be enforced. It is true the written contract did designate the relator and his wife as the "buyers", and the defendant and his wife as the "sellers", and that the reciprocal obligations of the contract were imposed on the respective parties jointly. But the wives never did sign the contract and yet, nevertheless, relator and defendant proceeded with it and made the several modifications heretofore recited. The defendant's wife testified she was and always had been willing to sign the deed. The relator's wife did not testify, but it appears she declines to execute any of the papers.

We are unable to see that these facts interpose any insuperable barrier against the enforcement of specific performance by relator. The defendant's wife is ready to join in the execution of the warranty deed to relator. Defendant is willing to accept a note and second deed of trust signed by the relator alone. And such a purchase money mortgage would bar the dower of relator's wife even though she did not sign it.[4] Her failure to sign the deed of trust certainly cannot thwart the transaction any more than if relator had been the vendor seeking to enforce specific performance, and she had refused to join in a deed with him; and yet it has been held in those circumstances that the purchaser can compel specific performance against the husband alone. Rice v. Griffith, 349 Mo. 373, 384, 161 S. W. (2d) 220, 225(7).

■ Next, relator argues that the defendant's evidence did not measure up to the high standard exacted in suits for the specific performance of oral contracts to convey land. The decision cited is Forrister v. Sullivan, 231 Mo. 345, 373-4, 132 S. W. 722, 730-L, which announces the familiar rule that to warrant such relief the evidence must be so clear, cogent and convincing as to satisfy the mind of the chancellor on every material point. But the Forrister

[4]19 C. J., sec. 30, p. 466; sec. 86, p. 486; 28 C. J. S., sec. 10 d(2), p. 76; sec. 36c, p. 99; 17 Am. Jur., sec. 21, p. 672; Bailey v. Winn, 101 Mo. 649, 660(5), 12 S. W. 1045, 1047(5); Russell v. Grant, 122 Mo. 161, 178(b), 26 S. W. 958, 961(b); Ragsdale v. O'Day, 61 Mo. App. 230.

case was referring to contracts sought to be enforced despite the statute of frauds. And the same is true of practically all the other Missouri decisions announcing the doctrine. So too of adoption cases and will cases, where there are controlling statutes.

But in the instant cause the relator did not invoke the statute of frauds, as we have already held. Furthermore, the basic evidence was partly a written contract, as regards the land and some of the personalty; and it has been quite reasonably said that this lowers somewhat the standard of quality of the requisite evidence. Kludt v. Connett, supra, 350 Mo. l. c. 806(5) 168 S. W. (2d) l. c. 1074(9), 145 A. L. R., l. c. 1023-4. Certainly the written evidence narrows the field of "conjecture" that far; though there is authority holding that proof of an oral modification of a written contract to convey land must be clear and convincing. 58 C. J., sec. 563, p. 1209; McKee v. Higbee, 180 Mo. 263, 296, 79 S. W. 407, 416. But in view of the inviolability, almost, of the statute of frauds, as stressed in many decisions, it would seem that when the statute is not involved the quantum of proof demanded should be less.

■ Here, the conversations were not ancient, loose and casual, or between ■ persons since deceased or on an unequal footing. And so, while most of the general authorities apparently make no distinction in the evidentiary requirements in specific performance cases, whether the statute of frauds is involved or not,[5] nevertheless, we think and hold the evidence in this case was sufficient. In so stating we do not forget the rule that equity will not enforce specific performance of a contract unless it is completed in its essential terms, or in other words, will not make a contract for the parties and then enforce it. 58 C. J., sec. 95, p. 929, sec. 106, p. 941. But we conclude that rule does not apply here for two reasons: first, because the failure to complete the details of the contract was relator's fault and in violation of his agreement;[6] and second, because the parties by stipulation have asked an equitable adjudication on the contract as actually made. In such circumstances the relator may be estopped to assert the contract has not been completed. 58 C. J., sec. 95, p. 929; Sparks v. Mauk, 170 Cal. 122, 123, 148 Pac. 926(3).

■ Another assignment is that there has not been sufficient part performance of the contract by the defendant-vendor to warrant the enforcement of specific performance in his favor as against the relator-purchaser. As matters stand all the relator has received thereunder and retained throughout, is the title certificates to the two trucks—

---

558 C. J., sec. 553, p. 1195; sec. 555, p. 1198; 58 C. J., sec. 561, p. 1206; 27 C. J. S., sec. 486, p. 388; 49 Am. Jur., sec. 169, p. 191; 49 Am. Jur., sec. 622, p. 928.

[6]Fry on Specific Performance (5 Ed.), sec. 849, p. 814; Pomeroy on Specific Performance (3 Ed.), sec. 405, p. 860; sec. 434, p. 902, sec. 408, p. 903; 49 Am. Jur., sec. 77, p. 94; 58 C. J., sec. 335, p. 1076.

and defendant demanded the return of those when relator stopped payment on his $500 check. But relator also obtained a redelivery of the trucks to him by the defendant when he gave defendant said $500 check. It is true defendant repossessed the truck without relator's consent the next day when the check was turned down, but relator immediately took them back by replevin. Outside of these two items relator has not received possession of anything under the contract. In other words, the defendant has never delivered to him possession of the land, boiler, or hogs. And as relator points out, while he has paid the defendant the first $875 due, defendant cannot treat that as part performance overcoming the statute of frauds, because the law is that such acts of performance must be those of the party seeking to enforce the contract,[7] in this case the defendant.

But since relator did not invoke the statute of frauds below, defendant need only prove that he is in good faith on his own part and has performed, or has offered and is ready, willing and able to perform all acts incumbent on him under the contract, so far as permitted by the relator.[8] Part performance is not an indispensable prerequisite. In this respect the law makes a clearer distinction regarding the amount of *performance* required, depending on whether the statute of frauds has been invoked or not, than it does respecting the quantity and quality of *proof* required in similar comparative circumstances, as discussed in the second and third preceding paragraphs. Furthermore, we do not consider the defendant's repossession of the trucks without relator's consent (after payment on the relator's $500 check had been stopped and he had sued defendant on the $775 note) as anything more than an act done in self-protection. It was not an abandonment of his rights under the contract, since he immediately asserted those rights in his answer. And beyond all that, we again stress the fact that the parties requested the lower court to adjudicate their equitable rights under the evidence without regard to technical defenses.

█ The final assignment is that defendant has failed to show he has no adequate remedy at law; and that he would not be fully compensated in an action for damages, or a successful defense of the replevin suits. This is, of course, the general █ rule in equity, but the legal remedy must be plain, adequate, complete, efficient and not circuitous. And where specific performance of a contract for the

---

[7]40 Am. Jur., sec. 436, p. 741; 27 C. J., sec. 427, p. 343; 58 C. J., sec. 188, p. 993.

[8]Pomeroy on Specific Performance (3 Ed.), sec. 323, p. 713; Fry on Specific Performance (5 Ed.), sec. 922, p. 457, sec. 923, p. 458, sec. 941, p. 464; 58 C. J., sec. 314, p. 1063, sec. 316, p. 1065; 49 Am. Jur., sec. 40, p. 53; C. G.-J. Interurb. Ry. Co. v. Lt. & Develop. Co., 277 Mo. 579, 617, 210 S. W. 361, 372; Ver Standig v. St. L. Union Trust Co., 344 Mo. 880, 887(5), 129 S. W. (2d) 905, 909(10) (this case involved a land contract to which the statute of frauds did apply).

sale of land is sought it is usually taken for granted that the legal remedy is inadequate, on the theory that land is unique and has a peculiar value.[9] Where both land and personalty are the subject of the contract, that doctrine is applicable to both.[10] The remedy is usually available to a vendor as well as a vendee on the theory of mutuality of remedy or equitable conversion of the title, although the consideration the vendor is to receive is money only.[11] We think it would be difficult to unscramble the several lawsuits and complicated facts in this case in one or more lawsuits before a jury. And we therefore overrule this last assignment made by relator.

All this leads to the conclusion that a decree of specific performance should be rendered. Yet it is obvious that the present decree of the trial court cannot stand. It requires, as its first alternative, that the defendant "have executed" a warranty deed of the land to relator, which we understand to mean that defendant's wife must join therein; and that defendant extend the time of payment of relator's $250 hog note to January 1, 1943. Thereupon it requires the relator to pay the defendant $500 in money; to execute and deliver the $3141 note, conditioned as specified; to secure the same by a second deed of trust on the 20 acres and a chattel mortgage on the two trucks, both, evidently, to be executed by relator alone; and that relator cancel and surrender to defendant the $775 note sued on. But the decree does not require defendant to deliver to the relator possession of the land, boiler and hogs, or to account for the latter, although relator is required to pay for all of them. We cannot enter a decree here. We do not know the value of the hogs and their increase, or whether they are still in defendant's possession or in existence at all. The best we can do is to reverse and remand the cause to the circuit court with directions to enter a decree covering these matters. But what shall these directions be?

By requiring the relator to pay $500 in money and execute a note, deed of trust and chattel mortgage, the circuit court evidently was proceeding on the ancient theory that a court of chancery is empowered to compel performance by an obligor of any necessary decretal acts, under penalty of incurring the displeasure of the court and the pains attendant thereon for disobedience, as enforced by contempt proceedings, injunction and remedies operating only in

---

[9]58 C. J., sec. 5, p. 849, sec. 7, p. 852, sec. 233, p. 1024; 49 Am. Jur., sec. 11, p. 20, sec. 92, p. 107; Rice v. Griffith, supra, 349 Mo., l. c. 383(3), 161 S. W. (2d) l. c. 225(6, 7); Rombauer v. Compton Heights Christian Church, 328 Mo. 1, 20(13), 40 S. W. (2d), 545, 554(16).

[10]58 C. J., sec. 274, p. 1044; 49 Am. Jur., sec. 92, p. 109.

[11]49 Am. Jur., sec. 92, p. 107-8, sec. 94, p. 110; 58 C. J., sec. 240, p. 1029.

personam.[12] But for over 130 years our statutes, now Secs. 1255-1257, R. S. 1939 and Mo., R. S. A., have authorized chancery courts to pass the title to both realty and personalty in such cases directly by its decree without any personal act by the obligor; and to proceed by writ of possession, attachment or sequestration. There may be some question as to whether these statutory remedies supersede or merely supplement the ancient equitable procedure, especially with respect to decrees requiring the mere payment of money and involving imprisonment for debt by way of punishment for contempt.[13]

Rather than have the trial court confronted with a refusal by relator to pay the $500 and to execute the note, second deed of trust and chattel mortgage, its further undoubted chancery powers should be exercised. These powers are broad. It can do complete justice; require an accounting; establish and enforce vendor's or other liens on terms provided in the contract; adjust equities for improvements made, deterioration, rent, interest ▮▮▮ and the like; and enforce specific performance in part and damages in part.[14]

The execution of the contract has been long delayed by relator's obstructive tactics. With respect to the defendant the requirements to be made by the court are simple. He should be ordered to deposit in court a warranty deed of the twenty acres of land to the relator, signed and acknowledged by himself and his wife, and to tender possession thereof to relator. The decree should order the time of payment of relator's hog note extended to a date to be stated therein by the court, and the defendant should be ordered to indorse said extension on the back of the note. The relator already has the two trucks and the certificates of title thereto. The defendant should be required to execute any necessary transfers thereon, all the foregoing indorsements to be to the satisfaction of the court. He should be further required to execute and deposit in court a bill of sale of the boiler on the 20 acres, and the hogs, describing the latter and their increase. The decree should additionally vest title to the land, trucks, boiler and hogs in the relator under the statute, Sec. 1257, supra, and

[12]58 C. J., sec. 631, p. 1275, sec. 634, p. 1277, sec. 635, p. 1278; 49 Am. Jur., sec. 179, p. 202; 19 Am. Jur., secs. 420, 421, p. 289; 12 Am. Jur., sec. 24, p. 405; Henderson v. Dickey, 50 Mo. 161, 165; Otto v. Young, 227 Mo. 193, 217, 127 S. W. 9, 17-18.

[13]58 C. J., sec. 635, p. 1278; 21 C. J., sec. 866, p. 693; 13 C. J., sec. 67, p. 51, sec. 76, p. 55; 30 C. J. S., sec. 617, p. 1015; 17 C. J. S., sec. 49, p. 63, sec. 59, p. 69; In Malloy v. Jones, 351 Mo. 1211, 1218(6), 175 S. W. (2d) 776, 780(8), the power was doubted, but enforced because the defendant had acquiesced therein below.

[14]Fry on Specific Performance (5 Ed.), sec. 429, p. 892, sec. 430, p. 893, sec. 449, p. 925; 49 Am. Jur., sec. 170, p. 192, sec. 174, p. 198, sec. 175, p. 199; 58 C. J., sec. 581, p. 1230, sec. 584, p. 1232, sec. 588, p. 1235, sec. 591, p. 1238, sec. 594, p. 1294; Kirby v. Balke, 306 Mo. 109, 122, 266 S. W. 704, 708(9).

the defendant should likewise tender possession of this personal property.

With respect to the relator, the requirements are more ·intricate. The land, two trucks and boiler, the latter being personalty, have from the beginning been bound in the same written contract, which we call the "land contract", and the modifications thereof, all to be paid for by a single consideration. When relator bought the hogs for $500, one-half that amount was paid by relator's $250 hog note, secured by a chattel mortgage on the hogs. The other $250 was added to the $1500 down payment under the land contract, making· $1750. That is as far as the hogs were involved in the land contract. They cannot be made to stand as security for the payment of the money due on the land, trucks and boiler. Defendant's answer alleged the note for the deferred payments under the modified land contract was to be secured by a second mortgage on the land and a chattel mortgage on the trucks *and* boiler. But the circuit court's decree requires the chattel mortgage to be on the trucks alone; and that seems to· be as far as defendant's evidence went on that point.

The point we have in mind is this. There will be no harm in the circuit court's new decree again requiring the relator to give a second mortgage on the land and a chattel mortgage on the two trucks, both to secure the note covering the payments due under the·modified land contract, with the $250 added for the hogs. But in case the relator refuses to do that, how far can the court reinforce its decree by directly fastening a lien on the land and trucks to secure these payments under the terms provided in the contract?

It appears by the weight of authority that a seller cannot have a vendor's lien as to personalty, but only as to realty, even when both· were sold in the same contract for a single consideration, though respectable authority reasonably holds the other way,[15] and this court has expressly refrained from deciding that question. Bragg v. Ross, 349 Mo. 511, 520, 162 S. W. (2d) 263, 267(6). But whatever the law may be on this point as regards vendor's liens, dependent merely on an *implied* intention, certainly it cannot thwart the power of equity in a specific performance case to do complete justice and enforce a lien against a recalcitrant obligor in a suit between the original parties where it was contractually agreed upon. We hold the court here has power to establish and enforce such a lien, as much so as if the note, second deed of trust and chattel mortgage had been executed. It may be the court by its decree cannot effectively compel relator to *assume* the $900 first mortgage on the 20 acres, but it can make the security

[15] 27 R. C. L., sec. 313, p. 571, sec. 324, p. 580, sec. 357, p. 605; 66 C. J., sec. 1090, p. 1224, sec. 1161, p. 1262; Smith v. Turner, 248 Ky. 116, 58 S. W. (2d) 258, 88 A. L. R. 87, note, pp. 93, 96, 100b; Doty v. Deposit Bldg. & Loan Assn., 103 Ky. 710, 46 S. W. 219, 43 L. R. A., 551; Zeiser v. Cohn, 207 N. Y. 407, 101 N. E. 184, 47 L. R. A. (N. S.) 186.

afforded by the liens imposed cover that obligation. If the relator refuses to make the cash payment of ▮ $500, that amount may be added to the sum due and covered by the liens; or the same may be separately awarded as damages, as stated in the next paragraph.

▮ The next and last question involves relator's agreement to agree upon the price of three new truck tires, and the increased value of the hogs on October 15, due to pig litters. The circuit court's decree allowed defendant $121 for the tires and included that amount in the note for $3141. Nothing was allowed for the increased value of the hogs. We are unable to find that relator agreed on any amount for either of these items, though he undoubtedly promised to do so when he gave his $500 check and obtained possession of the trucks. While equity regards that as done which ought to have been done, yet we do not feel the trial court can fix these values, include them in the total amount due, and then enforce specific performance. The $121 should be deducted from the $3141 as fixed by the trial court; and the court may call in a jury under Sec. 1258, R. S. 1939 and Mo., R. S. A., and assess defendant's damages as to these items. If the damages resulting from the increased value of the hogs be fixed as of October 15, 1942, the defendant should also be allowed the cost of feeding and keeping them during the time elapsed since. Or the defendant at his option may ask specific performance of the contract without the hogs, in which event the $250 due on the hogs should be deducted from the amount involved in the specific performance side of the case. The decree should, of course, cancel the $775 note sued on by relator and enjoin its collection. And certified copies of the degree should be filed in the land and chattel mortgage records, of Jackson county, as required by law.

This litigation is exceptional and never should have progressed as far as it has. For this reason, and because counsel in the trial court threw open the whole cause and requested the court to decide it on an equitable basis, we have dealt with it at such length. Under the new rules the case would be an excellent one to demonstrate the value of a pretrial conference. The costs are taxed one-half against each party, and the decree is reversed and remanded with directions to proceed as herein outlined, without reopening the whole cause on the merits. All concur.